(No. 48501.—

THE VILLAGE OF LOMBARD, Appellee, v. THE POL-LUTION CONTROL BOARD, Appellant.

*Opinion filed May 20, 1977.*

MORAN, J., took no part.

William J. Scott, Attorney General, of Springfield (Russell R. Eggert, Assistant Attorney General, of counsel), for appellant.

James K. Young, of St. Charles (Ralph J. Gust, Jr., of Lombard, of counsel), for appellee.

MR. JUSTICE DOOLEY delivered the opinion of the court:

The critical issue here is whether the Pollution Control Board, created by the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1001, 1005), has authority under that act to adopt regulations mandating the regional treatment of water in counties.

The Pollution Control Board promulgated a regulation whereby it divided Du Page County into nine water-treatment regions. (Rules 1101 through 1114 of part XI of chapter 3 (Water Pollution).) Each region, comprised of more than one unit of local government, was required to establish a centralized water-treatment program. The regulations were designed to compel cooperation in water treatment. A proliferation of numerous, small sewage-treatment plants in densely populated Du Page County constituted a severe impediment to the eradication of present water pollution and a threat of future water pollution.

Each region under the program in question was required to designate regional water-treatment authorities. These were charged with the planning, construction, and maintenance of the sewage-treatment plants, and the phasing out of smaller, inefficient plants.

On August 29, 1974, the Pollution Control Board finalized the regionalization regulation by promulgating a rule (Rule 1115 of part XI of chapter 3 (Water Pollution)) setting out the regionalization program and the final borders for each region. (13 Ill. P.C.B. Op. 427.) Petitioner, the village of Lombard, was located in one of the designated regions.

Lombard petitioned the appellate court for review of the regulation under section 29 of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1029). The Appellate Court, Second District, with one justice dissenting, held that the Pollution Control Board lacked statutory authority to promulgate the regulation requiring

the regional treatment of waste water. (37 Ill. App. 3d 440.) On petition by the Board, the appellate court granted a certificate of importance to this court under Rule 316 (58 Ill. 2d R. 316).

An administrative agency, such as the Pollution Control Board, has no greater powers than those conferred upon it by the legislative enactment creating it. (*Pearce Hospital Foundation v. Public Aid Com.* (1958), 15 Ill. 2d 301, 307; *People ex rel. Thompson v. Property Tax Appeal Board* (1974), 22 Ill. App. 3d 316, 322.) The Environmental Protection Act is neither sufficiently broad nor sufficiently specific to authorize the Pollution Control Board to mandate regional water treatment in a county.

Matters which the Environmental Protection Act specifically empowers the Pollution Control Board to regulate involve the establishment of standards. Water quality *standards*, effluent *standards, standards* for the issuance of sewage-treatment-facility permits, *standards* for the certification of technical personnel at sewage-treatment plants, abatement *standards* for water-pollution episodes, among other similar provisions, may all be set by the Pollution Control Board. Ill. Rev. Stat. 1975, ch. 111½, par. 1013(a).

It is true that the catalog of subjects which the Pollution Control Board may regulate is not exclusive. Obviously, the establishment of mandatory regional water-treatment regions to build, operate, and maintain water-treatment systems is broader regulation of water treatment than the establishment of standards. Where then is the authority for the creation of such regions?

Mindful of the admonition that "[w]e must be wary against interpolating our notions of policy in the interstices of legislative provisions" (*Scripps-Howard Radio, Inc. v. FCC* (1942), 316 U.S. 4, 11, 86 L. Ed. 1229, 1235, 62 S. Ct. 875, 880 (Frankfurter, J.)), we find no legislative intent in the Environmental Protection Act to authorize the Pollution Control Board to promulgate a regulation

involving detailed intervention by the Board into the economic and political operation of a county and the municipalities and sanitary districts within the county. Nor do we find an intent to permit the Board to compel independent governmental entities to cooperate with one another. An examination of the four corners of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1001 *et seq.*) fails to show vesting such authority in the Pollution Control Board. Indeed, wanting is the reference to even the possibility of such authority.

The Environmental Protection Act establishes the broad policy of the State to restore, maintain, and enhance the purity of the waters of the State. (Ill. Rev. Stat. 1975, ch. 111½, par. 1011(b).) It expressly enjoins anyone from causing, threatening or allowing the discharge of any contaminant into the waters of the State. (Ill. Rev. Stat. 1975, ch. 111½, par. 1012.) It grants the Pollution Control Board authority to adopt regulations to promote the Environmental Protection Act's purposes and provisions and lists matters upon which the Board may regulate "without limiting the generality of this authority." (Ill. Rev. Stat. 1975, ch. 111½, par. 1013(a).) All the matters specified involve the establishment of standards.

In construing a statute, divining the legislative intent of the language, as well as the purpose of a statute, is determinative. (*People v. Dednam* (1973), 55 Ill. 2d 565, 568; *Lincoln National Life Insurance Co. v. McCarthy* (1957), 10 Ill. 2d 489, 494.) "The cardinal rule in statutory construction is that the statute be construed so as to ascertain and give effect to the intention of the General Assembly as expressed in the statute." (*Inskip v. Board of Trustees* (1962), 26 Ill. 2d 501, 510.) The statute in question expresses a general policy to protect the State from pollution and creates a board of experts to implement that policy through regulation. Nowhere does it authorize a regional water-pollution plan requiring the cooperation of independent units of local government.

It is true that bills have been introduced before the General Assembly to provide for some form of regional water treatment. (H.B. 2060 (1971); S.B. 476 (1973).) These .bills have never been enacted into law. The village of Lombard argues that the Pollution Control Board acted out of impatience for enabling legislation. David Currie, then a member of the Pollution Control Board, stated the Board acted because the legislature failed to establish a countywide sanitation district.

Once the legislature has enacted a statute, it may delegate to others the power to implement the statute which it could itself execute but cannot advantageously or understandingly effect itself. (*Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 129-30, *Board of Education v. Page* (1965), 33 Ill. 2d 372, 375-76; *People ex rel. Daesch v. Mayor of Belleville* (1961), 22 Ill. 2d 226, 230; *People ex rel. Gutknecht v. Chicago Regional Port District* (1954), 4 Ill. 2d 363, 381; *Owens v. Green* (1948), 400 Ill. 380, 398.) However, to support such a delegation, the statute must contain standards to guide the agency charged with implementing the statute. (*Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 129-30; *Board of Education v. Page* (1965), 33 Ill. 2d 372, 375-76.) The Environmental Protection Act contains no such standards to guide the Pollution Control Board in promulgating regional water-treatment regulations.

Section 27 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1027), which lists elements the Board must take into account in promulgating regulations, does not address itself to the problems the Board must meet in mandating regional water treatment. It provides:

> "In promulgating regulations under this Act, the Board shall take into account the existing physical conditions, the character of the area involved, including the character of surrounding land uses, zoning classifications, the nature of the existing air quality, or receiving body of water, as the case may be, and the technical feasibility and economic reasonableness of measuring or reducing the

particular type of pollution." (Ill. Rev. Stat. 1975, ch. 111½, par. 1027(a).)

It does not empower the Board to consider the authority of existing governmental units and sanitary districts or to determine who is to fund the new water-treatment plants. Section 27 is directed toward the promulgation of standards, not regional water-treatment plans.

The starkly clear fact is that the General Assembly has not empowered the Pollution Control Board to coordinate sewage treatment through regional water-treatment plans in the State of Illinois.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.