(No. 50498.—

LANDFILL, INC., Appellant, v. THE POLLUTION CON-TROL BOARD *et al.,* Appellees.

*Opinion filed Dec. 4, 1978.—Opinion modified March 22, 1979.*

544

546

Kenneth J. Gumbiner and Richard V. Houpt, of Pedersen & Houpt, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (George William Wolff, Assistant Attorney General, and Dennis R. Fields, Special Assistant Attorney General, of counsel), for appellee the Pollution Control Board.

Samuel T. Lawton, Jr., of Chicago, for appellees Palos Conservation Committee *et al.*

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Landfill, Inc. (Landfill), filed a complaint for declaratory judgment against defendant, the Pollution Control Board (Board), in the circuit court of Cook County, seeking a declaration that Rule 503(a) of the Board's procedural rules was not authorized by the Environmental Protection Act (Act) (Ill. Rev. Stat. 1975, ch. 111½, pars. 1001 to 1051) and seeking an order enjoining the Board from conducting further proceedings under its Rule 503(a). The circuit court upheld the validity of Rule 503(a) and dismissed Landfill's action. This court allowed Landfill's motion for direct appeal under our Rule 302(b) (58 Ill. 2d R. 302(b)).

The complaint related that Landfill had filed an application for a sanitary landfill permit with the Environmental Protection Agency (Agency) in March of 1975. The Agency denied the application in October of 1975 until such time as Landfill supplied information relating to the land use and zoning of the site and surrounding area. Landfill appealed to the Board pursuant to section 40 of

the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1040) from the denial of the permit. The Board ruled that Landfill was required to provide the information requested by the Agency. No determination on the merits of Landfill's permit application was made by the Board. Landfill then submitted the required information to the Agency. The Agency held two days of public hearings at which interested third parties presented evidence and cross-examined Landfill's witnesses. Thereafter on July 2, 1976, the Agency issued a development permit to Landfill.

Following the issuance of the permit, certain of the individuals and groups who had made their objections known to the Agency during the permitting process and who are intervenors in the instant proceedings, filed an application before the Board under Procedural Rule 503(a) and Solid Waste Regulation 205(j) seeking, *inter alia,* to revoke the permit on the ground it was issued by the Agency in violation of the Act. The intervenors filed their application before the Board in July of 1976. The Board entered an interim order in October of 1976 stating that the application was in the nature of an enforcement action, rather than in the nature of a review, and that third parties who were not required to participate in the Agency's permit evaluation process were entitled to present new evidence to prove the violations alleged in their enforcement application.

After the Board issued its interim order, Landfill filed the instant action in the circuit court of Cook County wherein it challenged Rule 503(a). Landfill then filed a motion for preliminary injunction against the proceedings before the Board and for an expedited hearing on the complaint. On November 17, 1976, Judge Raymond Berg entered the preliminary injunction and ordered the Board to answer the complaint or otherwise plead on or before November 30, 1976, and to appear for further hearing on December 3, 1976. The hearing date of December 3, 1976,

was continued to December 8, 1976, at which time Judge Berg entered an order on Landfill's complaint holding that Rule 503(a) was void. On December 3, 1976, however, the Board had filed a notice of interlocutory appeal to the appellate court under our Rule 307(a)(1) (58 Ill. 2d R. 307(a)(1)). The appellate court affirmed the preliminary injunction. (52 Ill. App. 3d 154.) Thereafter the case was assigned to Judge Richard Curry of the circuit court of Cook County for further proceedings. On January 18, 1978, Judge Curry vacated the order that Judge Berg had entered after the Board had filed its notice of interlocutory appeal. On the same date Judge Curry held that the circuit court had jurisdiction to decide the issues raised in Landfill's complaint and that Rule 503(a) and Rule 205(j) were authorized by the Act. He dismissed Landfill's declaratory judgment action.

The Board and the intervenors raise the threshold question of whether the circuit court had jurisdiction to hear the declaratory judgment action filed by Landfill. They argue that Landfill has not exhausted its administrative remedies or complied with the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) and therefore is precluded from proceeding in circuit court to challenge the Board's assertion of authority, under its Rule 503(a) and Rule 205(j), to hear third-party challenges to the allowance of permits. Under the applicable administrative procedures, judicial review lies only from final orders of the Board (Ill. Rev. Stat. 1975, ch. 111½, par. 1041; see *Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, 39-40). The Board and the intervenors argue that Landfill should have first submitted the issue to the Board; upon a Board ruling adverse to Landfill, it should have proceeded before the Board and then sought review in the appellate court under section 41 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1041), which expressly makes the Administrative Review Act

applicable.

We hold, however, that exhaustion of administrative remedies is not required in this case. This court has held that where an administrative rule asserting administrative authority is challenged on its face as not authorized by the enabling legislation, exhaustion is not required. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548.) Exhaustion is not required where a statute or rule under which an administrative body purports to act is challenged as unauthorized, since the judicial determination will affect the jurisdiction of the administrative body in all matters, not only in the instant circumstances (see *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552).

The purposes for the exhaustion requirement are not served where an administrative assertion of authority to hear or determine certain matters is attacked on its face on the grounds that the assertion of jurisdiction is not authorized by statute. The rationale for the exhaustion doctrine is set forth in *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358:

> "[T]he reasons for its existence are numerous: (1) it allows full development of the facts before the agency; (2) it allows the agency an opportunity to utilize its expertise; and (3) the aggrieved party may succeed before the agency, rendering judicial review unnecessary. 2 F. Cooper, State Administrative Law 572-574 (1965); L. Jaffe, Judicial Control of Administrative Action 424-426 (1965); 3 K. Davis, Administrative Law Treatise secs. 20.01-20.10 (1958), and 1970 Supplement at 642-669."

Where an agency's statutory authority to promulgate a rule and exercise jurisdiction is in issue, no questions of fact are involved. The agency's particular expertise is not implicated in statutory construction. Further, there is virtually

no chance the aggrieved party will succeed before an agency where the issue is the agency's own assertion of authority. *Cf. Van Laten v. City of Chicago* (1963), 28 Ill. 2d 157, 159-60, and *Herman v. Village of Hillside* (1958), 15 Ill. 2d 396, 408, holding in the zoning context that exhaustion is not required before a declaratory judgment action may be filed where to seek further administrative action would be a useless act because the agency has already had occasion to express its opinion on the issue.

We conclude that where an administrative body's assertion of jurisdiction is attacked on its face and in its entirety on the ground that it is not authorized by statute, exhaustion of administrative remedies and compliance with the Administrative Review Act is not required. Under these circumstances the judicial determination involves a question of law which will affect the jurisdiction of the administrative body in all cases and will hasten the administration of justice. The circuit court had jurisdiction to hear Landfill's declaratory judgment action.

We reject also the Board's argument that section 29 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1029) required Landfill to file its action in the appellate court rather than in the circuit court. That section provides:

> "Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under Section 41 of this Act."

Section 41 provides that judicial review lies directly to the appellate court. (Ill. Rev. Stat. 1975, ch. 111½, par. 1041.) Section 29 has been directed to pre-enforcement challenges to substantive regulations by persons adversely affected or threatened by the regulation. (See, *e.g., Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503; *Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954; see also D. Currie, *Rule-*

*making Under the Illinois Pollution Law,* 42 U. Chi. L. Rev. 457, 473-74 (1975).) By contrast, Landfill is questioning the Board's authority to proceed with a pending action under a challenged rule. Once the hearing has begun, the provisions of section 41, permitting administrative review to the appellate court only from final orders, become applicable. Under those circumstances, the exception to the exhaustion requirement applies.

*Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, upon which the Board and intervenors place primary reliance, is not controlling since it did not involve a facial attack upon the administrative body's assertion of authority. Nor did it fall into any other exception to the exhaustion doctrine.

The Board's contention, advanced for the first time on oral argument, that the action against the Board was barred by sovereign immunity, is also without merit. Landfill is not seeking to enforce a present claim against the State, but, rather, seeks a declaration that the Board is taking actions in excess of its delegated authority. Such an action does not contravene principles of sovereign immunity. See *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548; see also *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 38.

We turn now to the substantive question of whether the Board had statutory authority to hear third-party challenges to permit-granting decisions by the Agency as asserted by the Board through its Rule 503(a) and Rule 205(j). Rule 503(a), in the form applicable at the time the intervenors filed their application before the Board, provided:

"Any person may file a complaint seeking revocation of a permit on the ground that it was improperly issued by the Agency, or seeking a cease-and-desist order against the activity described in the permit on the ground that it would cause a violation of the Act, of the Regulations, or

a Board order. Such a complaint shall be commenced in accordance with Part III, and Part III of these Rules shall govern the proceeding." (Illinois Pollution Control Board Procedural Rule 503(a), effective February 14, 1974.)

At the time Judge Curry made his determination, Rule 503(a) provided:

"Any person may file a complaint seeking revocation of a permit on the ground that it was issued by the Agency in violation of the Act, or the Regulations or of a Board Order, or seeking a cease-and-desist order against the activity described in the permit on the ground that it would cause a violation of the Act, or the Regulations, or of a Board order. Such a complaint shall be commenced in accordance with Procedural Rule 502(a). Part III of these Rules shall govern the proceedings." (Illinois Pollution Control Board Procedural Rule 503(a), effective April 1, 1977.)

Rule 205(j) provides:

"Any person adversely affected by the issuance of a permit may petition the Board for a hearing before the Board to contest the issuance by the Agency." (Illinois Pollution Control Board, Chapter 7: Solid Waste, Rule 205(j).)

All of Rule 205(j) and the first part of Rule 503(a), authorizing third parties to file permit-revocation proceedings on the grounds of Agency violation of the Act and the applicable regulations in granting the permit, are at issue here.

If the Board lacked statutory authority to promulgate Rule 503(a) and Rule 205(j), they are void. (See *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 551; *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 506; *City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 112-13.) In determining whether the Act justifies the Board's assertion of authority, we must analyze the statutory language. See *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 507.

The Board, which was created by the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1005(a)), serves both quasi-legislative and quasi-judicial functions within a statutorily established framework. It must determine, define, and implement the environmental control standards and may adopt rules and regulations (Ill. Rev. Stat. 1975, ch. 111½, pars. 1005(b), 1026, 1027). It has authority to conduct hearings upon, among other specified matters, complaints charging violations of the Act or of regulations thereunder and upon petitions for review of the Agency's denial of a permit as well as authority to hold other such hearings as may be provided by rule (Ill. Rev. Stat. 1975, ch. 111½, par. 1005(d)). It may adopt substantive regulations and procedural rules to accomplish the purposes of the Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1026, 1027).

The Agency too was created by the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1004(a)) and performs technical, licensing, and enforcement functions. It has the duty to collect and disseminate information, acquire technical data, and conduct experiments to carry out the purposes of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1004(b)). It has the authority to conduct surveillance and inspection of actual or potential pollution sources (Ill. Rev. Stat. 1975, ch. 111½, pars. 1004(c), (d)). It has the duty to investigate violations of the Act, regulations, and permits (Ill. Rev. Stat. 1975, ch. 111½, pars. 1004(e), 1030). The Agency must appear before the Board in hearings on the denial of permits, among other specified instances, and may appear in any other hearing under the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1004(f)). The Agency has the duty to administer permit systems established by the Act or regulations and has the authority to require permit applicants to submit plans and specifications and reports regarding actual or potential violations of the Act, regulations or permits (Ill. Rev. Stat. 1975, ch. 111½, pars. 1004(g), (h)). The authority to administer the permit

program has been held to be nondelegable. *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 410.

The Act contemplates the participation of private persons to effect the Act's purpose of restoring, protecting and enhancing the quality of the environment (Ill. Rev. Stat. 1975, ch. 111½, pars. 1002(a)(v), (b)). An interaction of the roles of the Board, the Agency, and private persons occurs in the enforcement provisions of the Act. Section 30 requires the Agency to conduct investigations of alleged violations of the Act, rules, regulations, and permits upon the request of the Board or upon the receipt of information concerning such alleged violations (Ill. Rev. Stat. 1975, ch. 111½, par. 1030). Section 31(a) provides that the Agency shall file a detailed complaint and serve written notice upon alleged violators if the investigation discloses a violation. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(a).) Section 31(b) allows citizen complaints against violations and requires the Board to hold a hearing unless it determines the complaint is duplicitous or frivolous. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b).) Section 31(c) places the burden on the Agency or other complainant to show that the respondent has threatened or caused air or water pollution or has violated or threatens to violate any provision of the Act or any rule, regulation or permit. Ill. Rev. Stat. 1975, ch. 111½, par. 1031(c).

The intervenors and the Board argue that section 31(b) authorized the Board to adopt Rule 503(a) and Rule 205(j), and to hear challenges to permits on the grounds they were issued by the Agency in violation of its statutory duty to grant permits only upon proof by the applicant that the undertaking will not cause a violation of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a)). Specifically, the intervenors argue in their brief that the Agency failed to give adequate consideration to the suitability of the site and issued the permit without sufficient proof of site suitability in contravention of its

duty under the Act and regulations. (See *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, 415.) They also argue that the Agency issued the permit without sufficient proof that the landfill will not cause a violation of any of the substantive provisions of the Act or regulations with respect to air, water, noise and land pollution.

Section 31(b) authorizes any person to file a complaint with the Board against any person allegedly violating the Act or any rule or regulation thereunder. It is the position of the Board and the intervenors that the Agency is a person violating the Act when it allows a permit without complying with the provisions of the Act or the applicable rules and regulations.

This argument ignores the context in which section 31(b) is found. Sections 30 and 31(a) speak in terms of Agency investigation of violations. The focus must be upon polluters who are in violation of the substantive provisions of the Act, since it would be unreasonable to presume these provisions direct the Agency to investigate its own compliance with permit-granting procedures. Sections 31(b) and 31(c) authorize citizen participation in the complaint and hearing proceedings against alleged violations of the Act. This language merely gives force to the legislative declaration "that in order to alleviate the burden on enforcement agencies, to assure that all interests are given a full hearing, and *to increase public participation in the task of protecting the environment,* private as well as governmental remedies must be provided." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 111½, par. 1002(a)(v).) As David Currie, a principal draftsman of the Act and the first chairman of the Board, has noted, section 31(b) provides for citizen complaints as an additional safeguard against inadequate prosecutions. (Currie, *Enforcement Under Illinois Pollution Law,* 70 Nw. U.L. Rev. 389, 451-52 (1975).) Prosecution under the Act, as already indicated, is against polluters, not the Agency.

The argument also ignores the statutory roles of the Board and the Agency in relation to permits. The Board's principal function is to adopt regulations defining the requirements of the permit system (Ill. Rev. Stat. 1975, ch. 111½, pars. 1005(b), 1039). The Agency's role is to determine whether specific applicants are entitled to permits (Ill. Rev. Stat. 1975, ch. 111½, par. 1039). The need for a technical staff capable of performing independent investigations dictates that the job of administering the permit system be entrusted to the Agency rather than the Board (Currie, *Enforcement Under Illinois Pollution Law,* 70 Nw. U.L. Rev. 389, 475 n.427 (1975)). If the Board were to become involved as the overseer of the Agency's decision-making process through evaluation of challenges to permits, it would become the permit-granting authority, a function not delegated to the Board by the Act.

The one statutory exception to the Board's quasi-legislative role in relation to permits is in instances in which the Agency has denied a permit (Ill. Rev. Stat. 1975, ch. 111½, pars. 1005(d), 1040). Explicit procedural requisites are established for Board review of permit denials (Ill. Rev. Stat. 1975, ch. 111½, par. 1040), and Agency appearance at such permit-denial hearings is mandated (Ill. Rev. Stat. 1975, ch. 111½, par. 1004(f)). The Agency is also required to transmit to the applicant a detailed statement as to the reasons the permit application was denied (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a)). There are no comparable statutory provisions for Board review on either substantive or technical grounds of the Agency's grant of a permit, thus indicating a legislative intent not to provide for such a proceeding. See *City Savings Association v. International Guaranty & Insurance Co.* (1959), 17 Ill. 2d 609, 612, holding that the expression of one thing in an enactment excludes any other even though there are no negative words prohibiting

it.

The intervenors attempt to distinguish a challenge to the allowance of a permit under Rule 503(a) and an appeal from the denial of a permit under section 40 on the grounds that the former is not a review but an enforcement proceeding at which additional evidence may be submitted. If the Rule 503(a) proceeding is not a review but a new determination of an applicant's entitlement to a permit, it is clearly an unauthorized assumption by the Board of authority to grant permits delegated by the Act to the Agency. Whether the basis for the proceeding under Rule 503(a) is that the Agency failed to give adequate consideration to evidence or that the Agency erred by granting a permit on evidence inadequate to show that the landfill would not cause environmental damage, the result of a 503(a) proceeding is to make the Board the permit-granting authority, a usurpation of the Agency's function.

Rule 503(a) is more than a procedural rule; it is a rule asserting the power of the Board to entertain certain matters. If the asserted power is not authorized by the Act, the procedural nomenclature appended to the rule by the intervenors and the Board cannot save it.

The intervenors point also to the language in section 5(d) which, in addition to listing specific hearings which the Board has authority to conduct, including hearings to review permit denials, states that the Board may hold "such other hearings as may be provided by rule" (Ill. Rev. Stat. 1975, ch. 111½, par. 1005(d)). This general provision does not provide authority for an evaluation of the Agency's decision-making process. Absent are any specific guidelines for the Board to use in entertaining such actions similar to those provided by the Act for challenges to permit denials. (See *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503.) The general statement following the list of specifically authorized

hearings indicates a legislative intent only to permit similar proceedings. (See *People ex rel. Myers v. Pennsylvania R.R. Co.* (1960), 19 Ill. 2d 122, 129 (specific enactment is operative against general provision on the same subject); 34 Ill. L. & Prac. *Statutes* sec. 118 (1958).) A third-party challenge to the allowance of a permit is dissimilar to a hearing upon a permit applicant's petition to review the Agency's denial of a permit. Furthermore, to permit challenges to the allowance of a permit before the Board undermines the statutory framework.

Finally, the Board argues that the allowance of a permit can impinge upon third parties' constitutional rights to a healthful environment (Ill. Const. 1970, art. XI, secs. 1, 2) and can threaten property rights (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2). Therefore, the Board argues, third parties are entitled by due process to a hearing on the allowance of permits. In the instant case the intervenors did participate in the permit-issuance process, although the Act does not guaranty such participation. The constitutional argument is without merit in light of the statutorily established mechanism for persons not directly involved in the permit-application process to protect their interests without embroiling the Board in an examination of the Agency's permit-granting procedure.

Section 31(b) authorizes citizen complaints against alleged violators of the Act, any Board rule or regulation, or Agency permit; it requires the Board to hold a hearing on all such complaints which are not "duplicitous or frivolous" (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b)). At that hearing, the complainant bears the burden of showing actual or threatened pollution or actual or threatened violations of any provisions of the Act, rules, regulations, or permits. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(c).) The grant of a permit does not insulate violators of the Act or give them a license to pollute; however, a citizen's statutory remedy is a new complaint

against the polluter, not an action before the Board challenging the Agency's performance of its statutory duties in issuing a permit. As the principal draftsman of the Act has noted, "One receiving a permit for an activity that allegedly violates the law can be charged with causing or *threatening to cause* such a violation in a citizen complaint under section 31(b), and the regulations expressly provide that the existence of a permit is no defense to such a complaint." (Emphasis added.) Currie, *Enforcement Under Illinois Pollution Law*, 70 Nw. U.L. Rev. 389, 478 (1975).

In sum, a consideration of the terms of the Act reveals a statutory scheme under which the Agency has the function of issuing permits. The Board has authority to hold enforcement hearings only upon separate citizen or Agency complaints, not challenging the Agency's performance of its duties but alleging that the activity contemplated causes or threatens pollution. We therefore conclude that Rule 503(a) and Rule 205(j) are unauthorized administrative extensions of the Board's authority.

For the above reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions to enter judgment for plaintiff, Landfill, Inc.

*Reversed and remanded,*
*with directions.*