ILLINOIS POWER COMPANY, Petitioner, *v.* THE POLLUTION CONTROL
BOARD *et al.*, Respondents.

Third District   No. 81-34

Opinion filed September 30, 1981.

PETITION for review of order of Pollution Control Board.

Sheldon A. Zabel and Carolyn A. Lown, both of Schiff, Hardin & Waite, of
Chicago, for petitioner.

Tyrone C. Fahner, Attorney General, of Chicago (William J. Barzano, Jr.,
Assistant Attorney General, of counsel), for respondents.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

The petitioner, Illinois Power Company (Illinois Power), asks us to
review an order of the Illinois Pollution Control Board (the Board), the
respondent. Our jurisdiction stems from the Environmental Protection
Act (the Act) (Ill. Rev. Stat. 1979, ch. 111½, par. 1041). The facts follow.

On November 21, 1979, Illinois Power filed a petition for review with the Board concerning the reissuance of a National Pollution Discharge Elimination System (NPDES) permit. The Illinois Environmental Protection Agency (the Agency) reissued the permit on October 23, 1979, with certain conditions. The permit, originally issued in 1975, covered the discharge of effluents into the Illinois River by petitioner's utility plant.

Prior to analyzing petitioner's claims before the Board, we believe it valuable to describe briefly some pertinent aspects of petitioner's Hennepin facility. The utility plant is a coal-fired power plant located on the Illinois River. It draws water from the river for cooling purposes. Because nutrients in the water generate the growth of slime inside the piping of the cooling system, the river water must be treated with chlorine from time to time. If neglected, the pipes would block, resulting in permanent damage to the cooling system. After the cooling process is completed, the chlorinated water is returned to the river in the plant's discharge.

Like the pipes in the cooling system, the plant's condensors must be protected. To implement this, the river water passes through a series of racks and mesh screens to remove residue which might foul and ruin the condensors. Large items are removed by hand by plant personnel and returned to the river. Smaller debris, such as fish, are backwashed. In backwashing, the screens and racks are raised and flushed with a high-powered water spray so that materials caught are dislodged. The matter then flows back into the river.

Previous to filing its petition for review before the Board, Illinois Power and the Agency settled many of their differences. Agreement could not be reached on permit limitations concerning the monitoring of chlorine discharge, as well as backwash screening controls. With respect to the former, petitioner argued, the Agency's technical requirements (*i.e.*, weekly river water tests, and graphic representation of results) to monitor chlorine levels were unnecessary. The additional costs in personnel to do the testing, and that no appreciable deviation in chlorine levels occurred on a weekly basis, petitioner maintained, militated against permit restraints. The Agency countered that seasonal deviations might occur.

With respect to backwash screening, the aim of the permit restriction was to impose curbs on the plant's discharge of dead or dying fish above certain levels. The Agency concluded dead fish returned to the river were pollutants, since impinged on the backwash screens or racks. No tests were conducted to establish how many fish were dead or dying when entering the flume leading up to petitioner's screening apparatus. Thus, petitioner was placed in the position of proving that such devices were not the cause of death or disability of those dead or dying fish which eventually re-entered the Illinois River in the plant's discharge.

Illinois Power also argued the Agency erred in refusing to allow its proposal to Standard Condition 27 of the NPDES permit. Finally, in a petition for rehearing, petitioner contended the Board's denial of its motion to complete the record was wrong.

The Board filed its final order on December 19, 1980. It stated the chlorine monitoring conditions were left to the option of the Agency: that is, the Agency could require Illinois Power, on a weekly basis, to conduct discharge sampling after periodic chlorination, and then graph the results, or impose another method of measuring chlorine at its discretion. A similar prerogative was accorded the Agency with respect to permit limitations concerning screen backwashing. The Board rejected the petitioner's proposal to Condition 27 as surplusage. It also denied its motion to complete the record. The Board remanded the permit to the Agency for rewriting consistent with its opinion.

On appeal to this court, Illinois Power says the Board failed to adjudicate its administrative appeal. Specifically, it maintains the Board left to the Agency the resolution of chlorine monitoring standards and backwash discharge restrictions, which is inconsistent with the Board's adjudicatory role under the Act. We agree. It also claims the Board's action in remanding to the Agency, with respect to both issues, is against the manifest weight of the evidence. Furthermore, it urges, that its proposal to Condition 27 should have been allowed. Finally, it says, allowing its motion to complete the record is indispensable for complete appellate review.

We reverse and remand. We will address all of petitioner's complaints except those two concerning whether the Board's decisions on chlorine and backwash discharge limitations are against the manifest weight of the evidence. Because further hearings must be conducted before the Board, our resolution of such issues would be untimely.

In the context of petitioner's appeal, it is important to distinguish between the roles the Board and Agency assume in the resolution of permit issuance and disputes arising therefrom. The Board is a creature of the legislature (Ill. Rev. Stat. 1979, ch. 111½, par. 1005). As such, it undertakes both quasi-legislative and quasi-judicial functions. In the former capacity, it drafts procedural rules and may adopt substantive regulations pursuant to its rule-making authority, as long as such are consistent with the purposes of the Act. In its adjudicative role, the Board has the authority to conduct hearings concerning violations of the Act, its regulations, or the denial of a permit. In the latter instance it is the Board's principal function to interpret regulations defining the requirements of the permit system. *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 557.

The Agency, on the other hand, is empowered by statute with the

technical, licensing, and enforcement functions in carrying out the Act. It must investigate violations of the Act and determine whether specific applicants are entitled to permits. The Agency has the authority to require permit applicants to submit detailed plans, as well as technical reports, concerning the issuance or reissuance of permits, or possible violations of the Act or Board regulations. *Landfill, Inc. v. Pollution Control Board.*

Quite clearly, the Board and the Agency have separate functions in the permit application procedure. Just as the Board is not the permit granting authority, neither is the Agency the Board's retainer in the interpretation of Board regulations.

When the Agency places prohibitions on a permit which an applicant finds objectionable, the applicant has the right to appeal those modifications to the Board (Ill. Rev. Stat. 1979, ch. 111½, par. 1040). When such administrative appeal is lodged, two things occur: the applicant and Agency legally solidify their adversarial positions; and, the adjudicatory posture of the Board is triggered to resolve the dispute.

The Board's order depreciates its functions as an adjudicative body. In remanding the permit, the Board gave the Agency the identical options to consider as permit conditions which petitioner originally contested as objectionable. The Board did not rule on petitioner's complaint that weekly graphs and water samplings were useless, but left such resolution up to the Agency as it saw fit. As to backwash screening, the Board concluded, "* * * the permit should expressly authorize the discharge of background or addition of traces to background * * *." The term "traces" is not defined. Even so, the Board found that if such "traces" of dead fish did exist in petitioner's discharge, Illinois Power would be required to remove all of that from the plant's effluents, or a violation would occur subjecting the plant to penalties. With respect to its resolution of these two issues, the Board failed to do its job.

■■ By statute (Ill. Rev. Stat. 1979, ch. 111½, par. 1033(a), (c)), the Board is required to write an order which is reasoned and explicable. It did not do this. The Board failed to decide anything as to the chlorine discharge limitations. It did not offer any reasons as to why monitoring in quarterly as opposed to weekly monitoring was unacceptable. The Board did not adjudicate the controversy before it.

The Board's decision is vague, since it fails to relate what comprises "traces." Therefore, the opinion is deficient because it fails to adequately inform the petitioner as to how it must conduct itself in order to comply with a permit limitation which employs such a term. We disagree with the Agency's contention that our determination of this issue is ill-timed or rash. In a very technical sense, no limitation exists since the Board has remanded the permit to the Agency for rewriting. But such an argument ignores the fact that it is the Board's remand which has created the very

indecision upon which administrative review was originally sought. Additionally, on remand, the decision as to the contested permit requirements are left to the discretion of the Agency either to adopt, reject, or modify. Such a situation arguably lends itself to arbitrary agency action which would result in yet another administrative appeal. Such a circular sequence of events hardly fosters the timely resolution of litigation.

Moreover, we believe that petitioner is entitled to a more definitive statement from the Board as to the extent of the restrictions the permit seeks to impose. This is especially so, where, as in the cause at bar, violation of a permit condition could result in criminal and civil sanctions (Ill. Rev. Stat. 1979, ch. 111½, pars. 1042, 1044). It is elementary that a party cannot be discharged with violation of a condition if the condition is written in such a manner so that a reasonable person cannot understand when a violation occurs. This is especially applicable with respect to the Board's failure to define "traces," but predicating possible liability on petitioner's failure to eliminate all "traces" of dead or dying fish from the plant's discharge.

Although, as hereinbefore stated, we will not pass on the sufficiency of the evidence, a passing observation is required.

No tests or experiments were conducted by the Agency at the Hennepin site, although it argued the racks and screens of that plant were the cause of the dying fish or offal which was in the backwash effluent. In lieu thereof, the Agency offered testimony of one of its engineers. He testified that in other utility plants employing similar screening mechanisms, the majority of the fish killed were done so by the screens and racks. This expert never visited the Hennepin plant.

Various reasons exist why the expert's assumption as to the cause of the fishes' death might not be so. For example, different screening devices could have been employed at Hennepin; or, the level of contaminants in the Illinois River as opposed to the condition of a river upon which a different utility was located might cause the fish to die or become diseased. Also, we believe the importance of firsthand observation by the expert is of significant value in assessing the quality of the expert's opinion on a given issue (E. Cleary & M. Graham, Handbook of Illinois Evidence §703.1 (3d ed. 1979)). Although the applicant has the ultimate burden of proof in a permit application, this does not permit an inference that Illinois Power has not discharged this burden if the Agency's evidence is unsatisfactory.

Next, petitioner challenges the Board's refusal to allow it to add a clause to Condition 27 of the NPDES permit. Petitioner attacked Condition 27, among others, since it claimed they gave the Agency a license to adopt and demand more stringent effluent limitations, thereby modifying the permit, without allowing it to seek review of such new restraints. With

respect to Condition 27, petitioner argues, the Agency's imposition of new requirements it deems applicable is, in effect, a substantive regulation, which is an invasion of the rule making authority of the Board. The Board denied petitioner's proposal.

The question petitioner conceives as requiring resolution has been inconsistently answered by Illinois Appellate Courts (*cf. Peabody Coal Co. v. Pollution Control Board* (1976), 36 Ill. App. 3d 5, 20, with *United States Steel Corp. v. Pollution Control Board* (1977), 52 Ill.App. 3d 1, 11). Since the record does not reflect the issue as Illinois Power presents it, we will not attempt to reconcile these two precedents on the facts in this cause.

■■ Condition 27 only becomes operable where the Board has failed to promulgate certain standards, or no Federal regulations exist concerning particular effluent limitations. Then, Rule 910(a)(6) of the Board allows the Agency to impose a restriction if it deems it necessary. Such could be a more stringent control than those existing on the permit already issued. In such an instance, setting the standard of the condition is left to the Agency's selection. However, as the Board noted:

> "The permit conditions (including Standard Condition No. 27) relate to exercise [*sic*] of the Agency's authority to impose effluent limitations pursuant to Rule 910(a)(6) of Chapter 3. If this authority is exercised, it will be by way of permit modification. Illinois Power may challenge that authority by way of appeal of the modified permit."

The Board has clearly stated that petitioner can attack the exercise of the Agency's authority to impose limitations under Rule 910(a)(6), if the Agency invokes such authority. This also includes the manner in which such power is exercised. But the Agency has not invoked such power or indicated its intent to do so in the immediate future. Therefore, to allow a challenge to the Board Rule, at this time, would be premature. The Board has acknowledged the petitioner's right to review any such modification in the permit. This preserves all Illinois Power's right to review such conditions and therefore its proposal to Condition 27 is extraneous.

The final issue is whether the Board erred in denying petitioner's motion to complete the record. On this matter, we also sustain the Board's decision.

The aim of petitioner's motion was a transcript of a Board meeting held the day the order in the instant cause was filed. Owing to some inconsistency as to individual Board member's opinions on the order, petitioner thought such information significant.

■■ Several reasons exist why any transcript of such meeting is not part of the record for purposes of appeal. First, the opinions of individual Board members are personal in nature and not actions of the Board. Furthermore,

534

such is not evidence. Also, the accuracy of the recorded information is disputed since a Board meeting, unlike a hearing before the Board, is not required to be recorded stenographically, or by another recording method (Ill. Rev. Stat. 1979, ch. 111½, pars. 1005, 1032). Accordingly, the Board was quite correct in denying petitioner's motion, and transmitting to this court said motion and the transcript as exhibits.

For the reasons stated, the Board's rulings on Condition 27 and the motion to complete the record are affirmed. Concerning chlorine and backwash discharge limitations, and the Board's remandment to the Agency, the Board's actions are reversed. The cause is remanded to the Board for consideration of both issues consistent with the views expressed in this opinion. After any further hearings with respect to such issues, the Board is to enter a new order which finally adjudicates the disputes both issues generate.

Affirmed in part; reversed in part; remanded with directions.

BARRY and STOUDER, JJ., concur.