ENVIRITE CORPORATION, Appellant, v. THE POLLUTION CONTROL
BOARD *et al.*, Appellees.

Third District   No. 3—92—0202

Opinion filed January 8, 1993.

Fred C. Prillaman, of Mohan, Alewelt, Prillaman & Adami, of Spring-
field (Stephen F. Hedinger, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (Alison E. O'Hara, Assistant Attorney General, of Chicago, of counsel), for respondents Pollution Control Board and Illinois Environmental Protection Agency.

Robin R. Lunn and Michael O'Neil, both of Keck, Mahin & Cate, of Chicago, and Brian J. Meginnes, of Keck, Mahin & Cate, of Peoria, for respondent Peoria Disposal Company.

JUSTICE BARRY delivered the opinion of the court:

Complainant-appellant Envirite Corporation (Envirite) is the operator of a hazardous waste treatment facility in Cook County, Illinois. One of the respondents-appellees is Peoria Disposal Company (PDC), a company that operates a hazardous waste treatment facility in Peoria County. On August 23, 1991, Envirite filed its complaint against PDC and the Illinois Environmental Protection Agency (the Agency) with the Pollution Control Board (the Board) alleging violations of the Illinois Environmental Protection Act (IEPA) (Ill. Rev. Stat. 1989, ch. 111½, par. 1001 *et seq.*). On December 19, 1991, the Board entered its decision granting summary judgment to PDC and dismissing plaintiff's cause of action against the Agency. Plaintiff brings this appeal directly to the appellate court pursuant to Supreme Court Rule 335 (107 Ill. 2d R. 335) and section 41 of the IEPA (Ill. Rev. Stat. 1989, ch. 111½, par. 1041). For reasons that follow, we affirm in part, reverse in part and remand this cause for further consideration.

According to the complaint in the record before us, both Envirite and PDC accept for treatment various hazardous wastes which are assigned codes by the United States Environmental Protection Act. For purposes of this appeal, we need identify only one such waste—F006— which is described as "wastewater treatment sludges from electroplating operations" containing cadmium, chromium and nickel. Envirite alleges, and it is not contested, that its treatment process is capable of neutralizing the F006 waste so as to render it nonhazardous, or "delisted," for purposes of the IEPA, before it is deposited in a nonhazardous waste landfill. By contrast, PDC alleges that its treatment process combines F006 wastes with other wastes and subjects them to a proprietary chemical stabilization process resulting in an end-waste that remains a "listed" F006 hazardous waste product, but for which the ability to leach is substantially inhibited. PDC has obtained authorization from the Illinois Environmental Protection Agency (the Agency) to dispose of its "stabilized" residue in its own

hazardous waste landfill until November 4, 1997. This authorization is required pursuant to section 39(h) of the IEPA for "generators" of hazardous waste. Ill. Rev. Stat. 1989, ch. 111½, par. 1039(h).

Production Plated Plastics is a Michigan industrial company which produces F006 hazardous waste in its electroplating operation. The company has not obtained section 39(h) authorization from the Agency. The complaint alleges that PDC has been accepting Production Plated Plastics' hazardous waste for treatment and disposal since March 1989. Envirite charges that PDC's acceptance, treatment and disposal of Production Plated Plastics' out-of-State waste violates section 21(e) of the IEPA (Ill. Rev. Stat. 1989, ch. 111½, par. 1021(e)) because of Production Plated Plastics' failure to first obtain section 39(h) authorization. Envirite alleges that since June 15, 1991, it has made various requests of the Agency to take action against PDC for violations of the IEPA, but that the Agency has not issued a formal complaint against PDC as allegedly required by sections 30 and 31(a) of the IEPA (Ill. Rev. Stat. 1989, ch. 111½, pars. 1030, 1031(a)).

Envirite's complaint against PDC and the Agency was filed before the Pollution Control Board on grounds that PDC was guilty of disposing of hazardous wastes in its landfill in violation of sections 39(h) and 21(e) of the IEPA, and that the Agency was guilty of administrative nonfeasance in violation of sections 30 and 31(a) of the IEPA by failing to abate PDC's practice. Both PDC and the Agency moved for dismissal or for summary judgment and filed supporting documentation. Envirite responded to the motions and moved for summary judgment in its favor. PDC and the Agency filed a consolidated response to Envirite's motion for summary relief. Envirite then moved to strike or to reply to PDC and the Agency's joint response.

After all parties had briefed their positions, the Pollution Control Board (Board) issued its decision on all pending matters. The Board denied Envirite's motion to strike or to reply to the joint response of the PDC and the Agency, granted the Agency's motion to dismiss, denied PDC's motion to dismiss, granted PDC's motion for summary judgment, and denied Envirite's motion for summary judgment. Specifically, the Board found that the IEPA does not permit the Board to direct the Agency's course of conduct; that "based upon these undisputed facts," Production Plated Plastics is not a "generator" for purposes of section 39(h) of the IEPA; and that as a matter of law PDC is both a "generator" and the owner/operator of its disposal site for purposes of section 39(h).

In this appeal, Envirite takes issue with: (1) the Board's holding that Production Plated Plastics and other hazardous waste producers/

customers of PDC's services are not required to obtain section 39(h) authorization for disposal of its hazardous waste in Illinois; (2) the Board's ruling that the Agency is not subject to enforcement proceedings before the Board; and (3) the Board's denial of Envirite's motion to reply to the joint response of the Agency and PDC to Envirite's motion for summary judgment.

Section 39(h) of the IEPA provides:

"Commencing January 1, 1987, a hazardous waste stream may not be deposited in a permitted hazardous waste site unless specific authorization is obtained from the Agency by the generator and the disposal site owner and operator for the deposit of that specific hazardous waste stream. The Agency may grant specific authorization for disposal of hazardous waste streams only after the generator has reasonably demonstrated that, considering technological feasibility and economic reasonableness, the hazardous waste cannot be reasonably recycled *** so as to neutralize the hazardous waste and render it nonhazardous. In granting authorization under this Section, the Agency may impose such conditions as may be necessary to accomplish the purposes of the Act and are consistent with this Act and regulations promulgated by the Board hereunder. If the Agency refuses to grant authorization under this Section, the applicant may appeal as if the Agency refused to grant a permit, pursuant to the provisions of subsection (a) of section 40 of this Act." (Ill. Rev. Stat. 1989, ch. 111½, par. 1039(h).)

The Act defines "generator" as "any person whose act or process produces hazardous waste." Ill. Rev. Stat. 1989, ch. 111½, par. 1003.12.

PDC, the Agency and the Board all reason that the original producers of hazardous waste are not "generators" as that term is used in the Act because of PDC's intervening treatment of its customers' hazardous waste prior to depositing it in PDC's landfill. Thus, these parties reason, since it is only PDC, the treatment facility, which ultimately disposes of the material in a waste site, PDC is the sole "generator" of such hazardous waste. Envirite argues that defendants erroneously focus on section 39(h)'s reference to a "hazardous waste stream," and that their interpretation of the term "generator" defies the clear intent of the Act. We agree.

Because statutory interpretation requires us to ascertain the true intent of the legislature, we find guidance in legislative debates pertaining to the proposed legislation. In this case, Representative Han-

nig's remarks at the third reading of Senate Bill 171 on June 17, 1981, are noteworthy:

> "This Bill, as amended [S.B. 171, adding subparagraph (h) to section 39 of the Act, and which was passed by both houses and enacted into law effective July 1, 1982, as Public Act 82–572] provides that the Illinois Environmental Protection Agency can demonstrate that when *** a hazardous waste flow can be recycled, incinerated or chemically or otherwise disposed of, that those wastes could not be buried. Now, the theory behind this concept is that burying hazardous wastes is probably the worst way to dispose of them and in those cases where it can be documented that reasonable methods of disposal are available then burying should be prohibited." 82d Ill. Gen. Assem., House Proceedings, June 17, 1981, at 50 (statements of Representative Hannig).

Speaking to Senate Bill 171 at a subsequent amendment stage on June 29, 1981, Representative Schraeder stated:

> "I want everybody to notice what this actually does by accepting this Motion. It will force anybody that has waste to provide scientific evidence that it cannot be disposed of in any other way. In the House Energy and Environment Committee, the Committee unanimously agreed that that was the wrong approach. The approach ought to be that the Illinois EPA ought to prove *** ... that it could not be .done scientifically and put the burden on the state rather than on industry. So if you want to protect industry's right to go ahead with these processes that they now have and which occur and cause waste, then I suppose you ought to agree with the Sponsor of this Motion. But if you want to protect the industry in the State of Illinois, then you should vote 'no'." (82d Ill. Gen. Assem., House Proceedings, June 29, 1981, at 290 (statements of Representative Schraeder).) (The Amendment was defeated.)

In our opinion, the comments of Representative Hannig and Representative Schraeder demonstrate that the legislature's primary objective in passing Senate Bill 171 was to encourage hazardous waste producers and/or treatment facilities to develop the technology needed to neutralize hazardous waste to the greatest degree possible and to permit transporting and landfilling of hazardous waste within this State only as a last resort.

■ Although the legislators participating in the debates do not distinguish between the original generators of hazardous waste and hazardous treatment facilities, it is clear from their remarks that one

of the legislators' concerns was the burden placed upon "industry" generators by the proposed legislation. Had the legislators envisioned imposing the burden of proving inability to further neutralize hazardous waste only on treatment facilities, we believe that they would have referred to the "hazardous waste treatment industry," rather than "industry" generally. They did not. It is obvious, therefore, that the legislators contemplated that original producers of hazardous waste—*i.e.*, "industry"—would be "generators" of "hazardous waste streams" as those terms are used in the statute.

It would appear that by requiring the original industrial producer of hazardous waste to obtain Agency authorization for disposal of its waste in Illinois, the legislative objective of section 39(h) is furthered. That is, the producer is encouraged to seek out a treatment method/facility capable of neutralizing its hazardous wastes, thereby preserving the integrity of Illinois' existing hazardous landfills. By contrast, permitting the original producer to bypass this requirement, as the Board has ruled in this case, would seem to defeat the legislative intent of the statute. In our opinion, both Production Plated Plastics and PDC are "generators" for purposes of section 39(h)—Production Plated Plastics because it is an original producer of hazardous waste entering a hazardous landfill in this State, and PDC because it ultimately disposes of hazardous waste in its hazardous waste landfill. Accordingly, we hold that the Board erred in ruling that Production Plated Plastics, as an original producer of F006 hazardous waste destined for deposit in an Illinois hazardous waste landfill, is not a "generator" that is required to obtain section 39(h) Agency authorization for disposal of its hazardous waste by PDC.

Next, Envirite argues that the Board erred in ruling that the Agency is not subject to an enforcement action before the Pollution Control Board. Envirite's action was filed against the Agency pursuant to section 31(b) of the IEPA. That section provides, in relevant part:

> "Any person may file with the Board a complaint *** against any person allegedly violating this Act or any rule or regulation thereunder or any permit or term or condition thereof. The complainant shall immediately serve a copy of such complaint upon the person or persons named therein." (Ill. Rev. Stat. 1989, ch. 111½, par. 1031(b).)

The Agency and the Board correctly point out that the Agency itself is not subject to a cause of action under this section. *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 556-57, 387 N.E.2d 258, 263-64.

As stated by our supreme court in *Landfill*:

> "Sections 30 and 31(a) speak in terms of Agency investigation of violations. The focus must be upon polluters who are in violation of the substantive provisions of the Act, since it would be unreasonable to presume these provisions direct the Agency to investigate its own compliance with permit-granting procedures. \*\*\* As David Currie, a principal draftsman of the Act and the first chairman of the Board, has noted, section 31(b) provides for citizen complaints as an additional safeguard against inadequate prosecutions. (Currie, *Enforcement Under Illinois Pollution Law*, 70 Nw. U.L. Rev. 389, 451-52 (1975).) Prosecution under the Act, as already indicated, is against polluters, not the Agency.
> \*\*\*
> The one statutory exception to the Board's quasi-legislative role in relation to permits is in instances in which the Agency has denied a permit [citation]. \*\*\* There are no comparable statutory provisions for Board review on either substantive or technical grounds of the Agency's grant of a permit, thus indicating a legislative intent not to provide for such a proceeding." 74 Ill. 2d at 556-57, 387 N.E.2d at 263-64.

■ In this case, Envirite charges that the Agency failed to require original generators of hazardous waste to obtain appropriate Agency authorization and improperly granted the required authorization solely to the treatment facility. In our opinion, these allegations of Agency nonfeasance and malfeasance are the functional equivalent of the objectors' challenges to the Agency's grant of a development permit to the sanitary landfill in the *Landfill* case. As aforesaid, the Act does not authorize an action before the Board to challenge the Agency's performance of its statutory duties in issuing such authorization. Thus, pursuant to *Landfill*, we hold that the Board did not err in dismissing the Agency from this action.

■ Finally, Envirite argues that the Board erred in denying it leave to file a reply brief to the joint response of PDC and the Agency to Envirite's motion for summary judgment. The Board's decision to grant or deny the reply brief was a matter sounding within the discretion of the Board and should not be reversed on appeal unless such decision is found to have been arbitrary and capricious. We have reviewed the record and find that the issues and the parties' positions were adequately presented and documented for the Board's full consideration of all motions for summary disposition. We hold that

the Board's decision to deny further briefing was neither arbitrary nor capricious and should not be disturbed.

For the foregoing reasons, the decision of the Pollution Control Board is affirmed in part and reversed in part. We remand this cause for reinstatement of the action against PDC and for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

STOUDER and SLATER, JJ., concur.