CITIZENS UTILITIES COMPANY OF ILLINOIS *et al.*, Petitioners, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Third District    No. 3—93—0736

Opinion filed August 10, 1994.—Modified opinion filed September 15, 1994.—Rehearing denied September 16, 1994.

Christopher J. Townsend, of Chapman & Cutler, of Chicago (Daniel J. Kucera, of counsel), and James S. Harvey and Timothy J. Rathbun, both of McKeown Law Office, of Joliet, for petitioners.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for respondents Pollution Control Board and Illinois Environmental Protection Agency.

Barry L. Moss, George A. Marchetti, and Norma J. Guess, all of Moss & Bloomberg, Ltd., of Bolingbrook, for respondent Village of Bolingbrook.

JUSTICE BARRY delivered the modified opinion of the court:

This case comes before this court pursuant to a petition for review of orders of the Illinois Pollution Control Board (Board), which held that the Board lacked jurisdiction over proceedings initiated by petitioners. For the reasons stated below, we affirm the decision of the Board.

## I. THE PARTIES

Petitioners in this case are the Citizens Utilities Company of Illinois (Citizens) and the Village of Plainfield (Plainfield). Respondents are the Pollution Control Board, the Illinois Environmental Protection Agency (Agency), and the Village of Bolingbrook (Bolingbrook).

The Illinois Environmental Protection Agency possesses the authority to create, revise and administer the Illinois Water Quality Management Plan (WQMP); establish and revise regional wastewater treatment service areas called Facility Planning Areas (FPAs); and issue wastewater plant permits under the federally mandated National Pollution Discharge Elimination System (NPDES).

The procedures for reviewing the decisions of the Agency vary depending upon the nature of the action. Circuit courts possess subject matter jurisdiction to review challenges to Agency decisions regarding WQMPs and FPAs. (See *Jurcak v. Environmental Protection Agency* (1987), 161 Ill. App. 3d 48, 53.) The Board possesses subject matter jurisdiction to review challenges to the denial of NPDES permits or conditions attached to permits. This court possesses jurisdiction to review decisions of the Board. See section 41(a) of the Environmental Protection Act (Act) (415 ILCS 5/41(a) (West 1992)).

Prior to the commencement of these proceedings, all of Bolingbrook was located within a single FPA, designated the "Bolingbrook FPA." Bolingbrook provided approximately one-third of its own wastewater service, with the remaining two-thirds being provided by petitioner Citizens. Although the Agency had not yet approved a facility plan for the Bolingbrook FPA, it had approved the plants being operated by Bolingbrook and Citizens through the issuance of NPDES permits.

To the west of the Bolingbrook FPA sits the "Plainfield FPA." Petitioner Plainfield operates the wastewater treatment facilities that serve the Plainfield FPA. Between the Bolingbrook FPA and the Plainfield FPA sits a tract of land that is the subject of this dispute.

## II. PROCEDURE BELOW

On March 4, 1992, Bolingbrook initiated proceedings before the

Agency, requesting that the tract of unincorporated land located between Bolingbrook and Plainfield be added to the Bolingbrook FPA. Citizens and Plainfield intervened in opposition, and Plainfield filed a separated application to include the same tract in the Plainfield FPA. Thereafter, Bolingbrook submitted a proposed facility plan for the Bolingbrook FPA. Under this proposal, Bolingbrook would construct, own and operate a new treatment plant to serve the tract and other areas. The Agency then conducted hearings on the FPA and facility plan requests. Citizens and Plainfield intervened in opposition and requested an evidentiary hearing.

On April 13, 1993, the Agency issued a ruling denying Plainfield's request that the disputed land be included within the Plainfield FPA. The Agency also issued a ruling denying Citizens' and Plainfield's requests for an evidentiary hearing. The Agency then granted Bolingbrook's requests. The Agency also ordered the creation of three new FPAs, although this had not been requested by any of the parties. Citizens has alleged that the effect of this portion of the Agency's decision eliminated portions of Citizens' present and potential service areas.

In a separate proceeding commenced on August 4, 1992, Bolingbrook requested that the Agency issue a NPDES permit for the proposed discharge from the new plant proposed by Bolingbrook. The Agency assigned this permit application to its permit section. Citizens and Plainfield filed objections, and requested an evidentiary hearing on the permit application. On April 14, 1993, the Agency issued its permit decision, denying Citizens and Plainfield's requests for a hearing and granting Bolingbrook the requested NPDES permit.

On May 13, 1993, Citizens and Plainfield filed a joint petition with the Board, challenging the Agency's decision to issue an NPDES permit and requesting a *de novo* evidentiary hearing. The petition set forth 11 reasons to reverse the Agency's decision:

(1) The Board improperly denied Citizens' and Plainfield's requests for a public hearing, when the public interest justified such a hearing;

(2) There exists no need for a new plant, since Plainfield and Citizens have available plant capacity to serve the proposed service area;

(3) Plainfield and Citizens have a cost-effective regional plan that would render Bolingbrook's proposed plant unnecessary;

(4) Bolingbrook's proposed plant is contrary to the public interest;

(5) Bolingbrook's proposed plant is contrary to sound regional planning;

(6) Bolingbrook's proposed plant is not cost effective;

(7) There is no justification for the proposed plant;

(8) The proposed plant is not within Bolingbrook's FPA and is not within a properly approved FPA;

(9) A substantial portion of the proposed plant would be located within the then-existing Plainfield FPA and is contrary to Plainfield's facility plan;

(10) The proceedings regarding the proposed plant, including those before the agency, were defective and contrary to law; and

(11) The proposed location for the plant is not appropriate and contrary to sound regional planning.

The Agency then moved to dismiss the appeal, and the Board dismissed for lack of subject matter jurisdiction. Specifically, the Board found that the joint petition related solely to the FPA proceedings. After a joint motion for rehearing was denied, Citizens and Plainfield filed their petition for review in this court.[1]

## III. Analysis

In their joint brief, Citizens and Plainfield raise numerous issues, including:

(1) Whether the Board has the legal authority to dismiss a permit appeal;

(2) Whether the Board erred in failing to receive, accept and consider the Agency record;

(3) Whether the Board erred in refusing to conduct a hearing;

(4) Whether the Board's dismissal order should be reversed because it was not based upon an evidentiary record;

(5) Whether the Board's dismissal order is contrary to the admitted facts contained within the petition for review;

(6) Whether the Board's dismissal order was erroneous because the objectors raised issues properly before the Board;

(7) Whether the Board erred in refusing to grant petitioners' request for a stay; and

(8) Whether the Board's dismissal order, issued prior to an evidentiary hearing, constituted a violation of due process.

The dispositive issue, however, is whether the Board correctly ruled that it lacked subject matter jurisdiction. If the Board lacked jurisdiction, then review of alleged procedural errors committed by the Board will not cure the jurisdictional defect. Conversely, if the Board erred in its jurisdictional finding, then reversal and remand-

---

[1]Yet another proceeding was commenced on June 2, 1993, in the circuit court of Will County, Illinois. Therein, Citizens and Plainfield filed a complaint for a writ of *certiorari*, declaratory judgment and injunctive relief. Said complaint alleged that the Agency's rulings of April 13, 1992, were illegal. This case is still pending in the circuit court.

ment would be necessary, and petitioners' other issues could then be considered.

As noted above, in granting the Agency's motion to dismiss, the Board concluded that it lacked subject matter jurisdiction. Specifically, the Board held that the 11 objections within the petition did not attack the issuance of the NPDES permit, but rather challenged the Agency's approval of the FPA and modifications to the WQMP. Since the Board lacks the authority to review the Agency's approval of FPAs and modifications of WQMPs, the Board concluded that it lacked subject matter jurisdiction over the joint petition filed by Citizens and Plainfield.

Before we can address whether the Board correctly interpreted the petition, however, we must consider whether Citizens and Plainfield were even entitled to file their petition with the Board. Bolingbrook asserts that the Board lacks jurisdiction over all third-party petitions opposing the issuance of NPDES permits by the Agency.

●1 Both appellants as well as the Agency and Board assert that Bolingbrook waived this issue by failing to file a cross-appeal. This contention is without merit. In this court, it is the final decision rather than the reasoning of the Board that is to be reviewed. (*People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 852.) The appellate court may affirm the Board's decision on any basis appearing in the record, regardless of the actual findings and rulings of the Board. (*Habinka v. Human Rights Comm'n* (1989), 192 Ill. App. 3d 343, 373.) Findings of a lower tribunal that are adverse to an appellee do not require the appellee to cross-appeal if the final decision of the tribunal was not at least in part against the appellee. (*Knecht Services*, 216 Ill. App. 3d at 852.) The necessity of filing a cross-appeal arises only in situations where the appellee requests the reversal or modification of the judgment below. *Knecht Services*, 216 Ill. App. 3d at 852.

Moreover, the issue raised is that of jurisdiction. There is no presumption of jurisdiction in favor of a body exercising limited or statutory jurisdiction; the facts upon which jurisdiction is founded must appear in the record. (*Kozsdiy v. O'Fallon Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 173, 175.) Where the tribunal below has no jurisdiction an appeal can confer no jurisdiction on the reviewing court, and the objection to jurisdiction may be interposed at any time. *Kozsdiy*, 31 Ill. App. 3d at 175.

●2 On the merits, we hold that the Board lacks jurisdiction over third-party petitions against the issuance of NPDES permits. In *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, our supreme court addressed the jurisdiction of the Board. Therein

Landfill, Inc., filed a complaint for declaratory judgment against defendant Pollution Control Board, seeking a declaration that Rule 503(a) of the Board's procedural rules was not authorized by the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1001 through 1051). Landfill's complaint stated that, after it sought and obtained a sanitary landfill permit, certain of the individuals and groups filed an application before the Board under Procedural Rule 503(a) and Solid Waste Regulation 205(j), seeking to revoke the permit on the ground it was issued by the Agency in violation of the Act. Rule 503(a) provided:

"Any person may file a complaint seeking revocation of a permit on the ground that it was improperly issued by the Agency, or seeking a cease-and-desist order against the activity described in the permit on the ground that it would cause a violation of the Act, of the Regulations, or a Board order ***." (Illinois Pollution Control Board Procedural Rule 503(a), eff. February 14, 1974.)

Rule 205(j) provided:

"Any person adversely affected by the issuance of a permit may petition the Board for a hearing before the Board to contest the issuance by the Agency." Illinois Pollution Control Board, Chapter 7: Solid Waste, Rule 205(j).

The Board issued an interim order stating that the application was in the nature of an enforcement action, rather than in the nature of a review, and that the third parties were entitled to present new evidence to prove the violations alleged in their enforcement application. Eventually, the circuit court upheld the validity of Rule 503(a), and the supreme court allowed a direct appeal under Supreme Court Rule 302(b) (58 Ill. 2d R. 302(b)).

The supreme court addressed the issue of whether the Board had statutory authority to hear third-party challenges to permit-granting decisions by the Agency. The supreme court explained that if the Board lacked statutory authority to promulgate Rule 503(a) and Rule 205(j), then the rules were void. *Landfill*, 74 Ill. 2d at 553, citing *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 551; *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 506; *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 112-13.

In deciding the authority of the Board to hear the objections of third parties, the supreme court stated that the Board was created by the Environmental Protection Act and serves both quasi-legislative and quasi-judicial functions within the statutorily established framework. It must determine, define, and implement the environmental control standards and may adopt rules and regulations. It has

authority to conduct hearings upon, among other specified matters, complaints charging violations of the Act or of regulations thereunder and upon petitions for review of the Agency's denial of a permit as well as authority to hold other such hearings as may be provided by rule. It may adopt substantive regulations and procedural rules to accomplish the purposes of the Act. *Landfill*, 74 Ill. 2d at 554.

The Agency too was created by the Act and performs technical, licensing, and enforcement functions. It has the duty to collect and disseminate information, acquire technical data, and conduct experiments to carry out the purposes of the Act. It has the authority to conduct surveillance and inspection of actual or potential pollution sources. It has the duty to investigate violations of the Act, regulations, and permits. The Agency must appear before the Board in hearings on the denial of permits, among other specified instances, and may appear in any other hearing under the Act. The Agency has the duty to administer permit systems established by the Act or regulations and has the authority to require permit applicants to submit plans and specifications and reports regarding actual or potential violations of the Act, regulations or permits. *Landfill*, 74 Ill. 2d at 554.

The supreme court also noted that the Act contemplates the participation of private persons to effect the Act's purpose of restoring, protecting and enhancing the quality of the environment. An interaction of the roles of the Board, the Agency, and private persons occurs in the enforcement provisions of the Act. Section 30 of the Act requires the Agency to conduct investigations of alleged violations of the Act, rules, regulations, and permits upon the request of the Board or upon the receipt of information concerning such alleged violations. (Formerly Ill. Rev. Stat. 1975, ch. 111½, par. 1030 (now 415 ILCS 5/30 (West 1992)).) Section 31(a) provides that the Agency shall file a detailed complaint and serve written notice upon alleged violators if the investigation discloses a violation. (Formerly Ill. Rev. Stat. 1975, ch. 111½, par. 1031(a) (now 415 ILCS 5/31(a) (West 1992)).) Section 31(b) allows citizen complaints against violations and requires the Board to hold a hearing unless it determines the complaint is duplicitous or frivolous. (Formerly Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b) (now 415 ILCS 5/31(b) (West 1992)).) Section 31(c) places the burden on the Agency or other complainant to show that the respondent has threatened or caused air or water pollution or has violated or threatens to violate any provision of the Act or any rule, regulation or permit. Formerly Ill. Rev. Stat. 1975, ch. 111½, par. 1031(c) (now 415 ILCS 5/31(c) (West 1992)); *Landfill*, 74 Ill. 2d at 555.

In *Landfill*, the Board argued that section 31(b) authorized the Board to hear challenges to permits on the grounds they were issued by the Agency in violation of its statutory duty. As noted above, section 31(b) authorizes any person to file a complaint with the Board against any person allegedly violating the Act or any rule or regulation thereunder. The Board argued that the Agency is a person violating the Act when it allows a permit without complying with the provisions of the Act or the applicable rules and regulations. *Landfill*, 74 Ill. 2d at 555-56.

The supreme court held that this argument ignored the context in which section 31(b) is found. Sections 30 and 31(a) speak in terms of Agency investigation of violations. The focus must be upon polluters who are in violation of the substantive provisions of the Act, since it would be unreasonable to presume these provisions direct the Agency to investigate its own compliance with permit-granting procedures. Sections 31(b) and 31(c) authorize citizen participation in the complaint and hearing proceedings against alleged violations of the Act. This language merely gives force to the legislative declaration that in order to alleviate the burden on enforcement agencies, to assure that all interests are given a full hearing, and to increase public participation in the task of protecting the environment, private as well as governmental remedies must be provided. *Landfill*, 74 Ill. 2d at 556.

The supreme court also stated that the Board's argument ignores the statutory roles of the Board and the Agency in relation to permits. The Board's principal function is to adopt regulations defining the requirements of the permit system, while the Agency's role is to determine whether specific applicants are entitled to permits. The need for a technical staff capable of performing independent investigations dictates that the job of administering the permit system be entrusted to the Agency rather than the Board. If the Board were to become involved as the overseer of the Agency's decision-making process through evaluation of challenges to permits, it would become the permit-granting authority, a function not delegated to the Board by the Act. *Landfill*, 74 Ill. 2d at 557.

One statutory exception to the Board's quasi-legislative role in relation to permits pertains to instances where the Agency has denied a permit. Explicit procedural requisites are established for Board review of permit denials, and Agency appearance at such permit-denial hearings is mandated. The Agency is also required to transmit to the applicant a detailed statement as to the reasons the permit application was denied. There are no comparable statutory provisions for Board review on either substantive or technical grounds of

the Agency's grant of a permit, thus indicating a legislative intent not to provide for such a proceeding. *Landfill*, 74 Ill. 2d at 557.

Finally, in *Landfill*, the Board argued that the allowance of a permit can impinge upon third parties' constitutional rights to a healthful environment (Ill. Const. 1970, art. XI, §§ 1, 2) and can threaten property rights (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2). Thus, the Board argued that third parties are entitled by due process to a hearing on the allowance of permits. The supreme court held that this constitutional argument was without merit in light of the statutorily established mechanism for third parties to protect their interests without embroiling the Board in an examination of the Agency's permit-granting procedure. The grant of a permit does not insulate violators of the Act or give them a license to pollute. Thus, a citizen's statutory remedy is a complaint against the polluter rather than an action before the Board challenging the Agency's performance of its statutory duties in issuing a permit. *Landfill*, 74 Ill. 2d at 559-60.

Accordingly, the supreme court concluded that Rule 503(a) and Rule 205(j) were unauthorized administrative extensions of the Board's authority. *Landfill*, 74 Ill. 2d at 560.

Here, as in *Landfill*, the Board has enacted a rule which purports to extend its powers in cases wherein third parties have filed complaints against permits issued by the Agency:

"Any person other than the applicant who has been a party to or participant at an Agency hearing with respect to the issuance or denial of an NPDES Permit by the Agency, or any person who requested such a hearing in accordance with the applicable rules, may contest the final decision of the Agency by filing with the Clerk a petition for review of the Agency's action." (35 Ill. Adm. Code § 105.102(b)(3) (1993).)

Thus, as in *Landfill*, the Board has attempted to improperly expand its powers beyond those authorized by statute.

Citizens and Plainfield argue that this case is distinguishable from *Landfill* because the latter involved a sanitary landfill permit while this case involves the issuance of an NPDES permit. We find no meaningful distinction between the issue presented in *Landfill* and the issue presented here. The procedures to be followed in both landfill and NPDES cases are governed by the same sections of the Environmental Protection Act. In both situations, the Act provides that the Board may review appeals by applicants when the Agency denies a permit application or grants an application but attach conditions. Neither *Landfill* nor this case involves the Agency denying a permit or placing conditions upon the granting of a permit.

Thus, as in *Landfill*, the purported authority of the Board rests not with the statute, but solely the Board's own rule. "There are no comparable statutory provisions for Board review on either substantive or technical grounds of the Agency's grant of a permit, thus indicating a legislative intent not to provide for such a proceeding." *Landfill*, 74 Ill. 2d at 557.

Finally, Citizens and Plainfield argue that it is important for the public to participate in the NPDES permit process. However, as the supreme court ruled in *Landfill*, the present statutory scheme is constitutional since citizens are not precluded from commencing separate actions against polluters who violate the law. The wisdom of limiting the rights of third parties in the permit issuing and review of agency process is an issue best directed to the legislature. This court will not and cannot inject provisions not found in a statute, however desirable or beneficial they may be. *Droste v. Kerner* (1966), 34 Ill. 2d 495, 504.

Accordingly, for the foregoing reasons, we affirm the decision of the Board that it lacked jurisdiction in this case. In light of this holding, we need not address the other issues raised by the parties.

The decision of the Pollution Control Board is affirmed.

Affirmed.

SLATER, P.J., and McCUSKEY, J., concur.