(text box: 1) NO. 5-04-0491

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

In re
 OBJECTION OF )  Appeal from the

KENNETH J. McSPARIN )  Circuit Court of

)  Saline County.

(Todd P. Bittle, )

)

     Petitioner-Appellant, )

)

v. )  No. 04-MR-30

)

Saline County Electoral Board and Its )

Members, Kenneth Clore, Lowell D. Tison, Jr., )

and Jack T. Nolen, )

)  

     Respondents, )  

) 

and )

)

Kenneth J. McSparin, )  Honorable

)  Stephen L. Spomer,

     Respondent-Appellee). )  Judge, presiding.

________________________________________________________________________

JUSTICE DONOVAN delivered the opinion of the court:

On August 31, 2004, we entered an order affirming the circuit court in this matter and stated that our opinion would follow.  An opinion is now rendered, with a special concurrence by Justice Kuehn and with a dissent by Justice Welch..

On May 7, 2004, appellant, Todd P. Bittle, filed nomination papers to fill a vacancy in nomination for the Republican candidate for Saline County State's Attorney.  Appellee, Kenneth J. McSparin, filed a petition objecting to Bittle's nomination papers.  The Saline County Electoral Board (Board) convened and heard the objections of McSparin.  On June 22, 2004, the Board reconvened and rendered its decision.  The Board held that Bittle's nomination papers were legally insufficient and that the vacancy sought to be filled had not been filled in accordance with section 7-61 of the Election Code (Code) (10 ILCS 5/7-61 (West 2002)).  The Board ruled that Bittle's name was not to be listed on the ballot for the November 2, 2004, general election.

Bittle sought judicial review of the Board's decision in the circuit court of Saline County, Illinois.  McSparin also sought judicial review.  On July 26, 2004, the circuit court filed its order affirming the ruling of the Board, but it gave a different reason than the one given by the Board.  Bittle filed his notice of appeal on August 2, 2004.  We denied his motion to stay the circuit court's order, but we granted his motion for an expedited appeal.  We affirm.

BITTLE'S MOTION TO STRIKE

On August 27, 2004, Bittle filed in this court a motion to strike all the portions of McSparin's appellee's brief that addressed the reason the Board had denied Bittle access to the ballot.  In his motion Bittle contends that because his brief in this matter raised only one issue–whether the trial court erred in finding that his nomination papers were invalid because he had voted in the Democratic primary in March 2004–McSparin could not raise the issue he lost in the circuit court–whether Bittle's nomination papers are invalid because the date of his selection does not appear on the face of the resolution.  We disagree and deny Bittle's motion to strike.  An appeal from a final judgment draws into issue all prior nonfinal orders that produced the judgment.  
Steinberg v. System Software Associates, Inc.
, 306 Ill. App. 3d 157, 713 N.E.2d 709 (1999).  It is well established that the findings of a lower tribunal that are adverse to an appellee do not require the appellee to cross-appeal if the final decision was not at least in part against the appellee.  
Citizens Utilities Co. of Illinois v. Pollution Control Board
, 265 Ill. App. 3d 773, 639 N.E.2d 1306 (1994).

BACKGROUND

During the March 2004 primary election, no Republican candidate for Saline County State's Attorney was listed on the ballot.  Thereafter, Bittle filed his nomination papers to fill the vacancy in nomination as the Republican candidate for Saline County State's Attorney.

On May 24, 2004, McSparin filed his objector's petition pursuant to section 10-8 of the Code (10 ILCS 5/10-8 (West 2002)).  McSparin objected to the listing of Bittle as a candidate for Saline County State's Attorney for the following reasons:

"A. Mr. Bittle's nomination papers are invalid because in his sworn statement of candidacy he claims to be a qualified primary voter of the Republican Party while in fact he voted in the March 16, 2004, Democratic primary.

B. The date of Mr. Bittle's selection by the Republican Party does not appear on the face of the resolution filed with the nomination papers, as required by law."

The Board convened on May 28, 2004, and attended to only procedural matters on that date.  It reconvened on June 3, 2004, and heard testimony and accepted documents into evidence.  During that hearing, Bittle testified on his own behalf.  He stated he had always voted Republican and that the March 2004 primary election was the first time he had voted Democrat.  He did so because he was an attorney practicing criminal law in the county, and since there was no Republican candidate, he felt he should have a say in the election for the next State's Attorney.  After the primary, he was approached by members of the Saline County Republican Central Committee about running as the Republican nominee for State's Attorney.

Thereafter, Bittle was invited to attend a meeting of the Republican central committee and on April 17 or 18, 2004, was appointed as a Republican precinct committeeman.  He was eventually nominated as the Republican candidate for State's Attorney.

Bittle stated that, when he filled out his statement of candidacy, he was already a Republican precinct committeeman.  He had always voted Republican.  He considered himself a Republican and felt that on May 7, 2004, when he signed his statement of candidacy, he was a Republican.

The Board issued its decision on June 22, 2004.  The Board overruled McSparin's first objection, which complained that Bittle had voted in the Democratic primary but now seeks office as a Republican.  The Board did, however, sustain McSparin's second objection, which related to the date of Bittle's selection not appearing on the resolution filed by the Republican Party.  The Board based its decision entirely on 
Zerante v. Bloom Township Electoral Board
, 287 Ill. App. 3d 976, 679 N.E.2d 459 (1997).  Because it sustained one of the objections, it ruled that the vacancy had not been filled in accordance with section 7-61 of the Code, that Bittle's nomination papers were invalid, and that he should not be listed on the ballot for the November 2, 2004, general election.

Bittle filed his petition for judicial review on July 1, 2004, seeking to have the circuit court overturn the decision of the Board.  McSparin also filed a petition for judicial review on the same date.  The circuit court filed its decision July 26, 2004, sustaining the ruling of the Board not to allow Bittle's name on the general election ballot.  The circuit court's decision, however, was based on a different reason than the one on which the Board had based its decision.  The circuit court held that because Bittle had voted in the Democratic primary and his statement of candidacy stated he was a "qualified primary voter of the Republican party," his statement of candidacy could not comply with the requirements of the Code.  Bittle filed his notice of appeal on August 2, 2004.

ANALYSIS

Section 7-61 of the Code provides in pertinent part as follows: 
 "Any vacancy in nomination under the provisions of this Article 7 occurring on or after the primary and prior to certification of candidates by the certifying board or officer[] must be filled prior to the date of certification.  Any vacancy in nomination occurring after certification but prior to 15 days before the general election shall be filled within 8 days after the event creating the vacancy.  
The resolution filling the vacancy shall be sent by U.S. mail or personal delivery to the certifying officer or board within 3 days of the action by which the vacancy was filled;
 provided, if such resolution is sent by mail and the U.S. postmark on the envelope containing such resolution is dated prior to the expiration of such 3[-]day limit, the resolution shall be deemed filed within such 3[-]day limit.  
Failure to so transmit the resolution within the time specified in this Section shall authorize the certifying officer or board to certify the original candidate
.  ***  

The resolution to fill a vacancy in nomination
 shall be duly acknowledged before an officer qualified to take acknowledgements of deeds and 
shall include, upon its face, the following information
: 

(a) the name of the original nominee and the office vacated;

(b) the date on which the vacancy occurred; [and]

(c) the name and address of the nominee selected to fill the vacancy and the 
date of selection
."  (Emphasis added.)  10 ILCS 5/7-61 (West 2002).  

This case cannot be distinguished from 
Zerante
.  As in 
Zerante
, the resolution filed by Bittle with his nomination papers did not contain the date upon which he was selected to fill the vacancy in nomination.  As the court found in 
Zerante
: 

"[S]ection 7-61 of the Code provides that failure to transmit a resolution to the certifying authority within three days of the date that a vacancy in nomination is filled 'shall authorize the certifying officer or board to certify the original candidate.'  10 ILCS 5/7-61 (West 1994).  Consequently, the failure of a resolution to specify the date of selection renders it impossible for the certifying authority to determine if the person selected to fill the vacancy in nomination, or the original candidate, is to be certified to the election authority authorized to prepare the ballot.  
It is this inability of the certifying authority to determine its statutory duties under such circumstances that leads us to conclude that the provision of section 7-61 that states that a resolution shall contain the date of selection is mandatory
."  (Emphasis added.)  
Zerante
, 287 Ill. App. 3d at 980, 679 N.E.2d at 461-62.

Bittle concedes that the resolution does not contain the date of his selection, but he tries to distinguish 
Zerante
 by arguing that the resolution that he submitted to the Board contained two dates and that, by implication, one of the dates should be considered the date of the resolution.  The first date he refers to is the date the party chairman and secretary signed the resolution, and the second date refers to the date the document was notarized.  This argument was specifically addressed in 
Zerante
, wherein the court stated:

"The acknowledgement of the resolutions before the notary satisfied the acknowledgement requirement of the statute[] but did not satisfy the requirement that a resolution 'include, upon its face, *** the date of selection.'  10 ILCS 5/7-61 (West 1994).  
We know of no case which holds that the events related in a signed document are presumed to have occurred on the date that the document was signed
."  (Emphasis added.)  
Zerante
, 287 Ill. App. 3d at 979, 679 N.E.2d at 461.

Although it would be considered judicial 
dicta
, we have previously followed the holding in 
Zerante
, when we addressed a similar issue in 
Forcade-Osborn v. Madison County Electoral Board
, 334 Ill. App. 3d 756, 778 N.E.2d 768 (2002).  In 
Forcade-Osborn
 we stated:

"It is true that Illinois courts favor ballot access for candidates who wish to run for public office.  This does not mean, however, that mandatory requirements can be circumvented.  See 
Zerante v. Bloom Township Electoral Board
, 287 Ill. App. 3d 976, 980, 679 N.E.2d 459, 461-62 (1997) (the failure to specify the date of the resolution upon which the candidate was selected to fill the vacancy in nomination prevented a determination of whether the resolutions were transmitted to the certifying authority in a timely fashion).  

Petitioner had three different statutory mechanisms for gaining access to the ballot.  Petitioner chose not to subject herself to two of those options, both of which required a showing of 'grass roots' support.  Petitioner's nomination was made by just three individuals.  Under those circumstances, we cannot fault the legislature for being very specific on the manner in which one's name is placed on the ballot when one has chosen not to follow the 'customary' procedures for nomination.  It is the conduct of petitioner's representatives, by failing to timely file the nomination within three days, that serves to deny petitioner access to the ballot for the November 2002 election.  The rules are not hypertechnical as petitioner suggests but are designed to ensure the integrity of the election process in general." 
 Forcade-Osborn
, 334 Ill. App. 3d at 760, 778 N.E.2d at 771-72.

Having found the provision of section 7-61 of the Code requiring a resolution to specify the date upon which an individual was selected to fill a vacancy in nomination to be mandatory, and because the resolution filed by Bittle with his nomination papers on May 7, 2004, did not specify the date of his selection, we find that the Board correctly found Bittle's nomination papers to be legally insufficient.  Accordingly, we need not address the other issues raised by Bittle directed to the additional ground relied upon by the trial court in declaring his nomination papers deficient.

Affirmed.

JUSTICE KUEHN, specially concurring:

A desire to allow Saline County voters a choice about who should be their chief law enforcement officer for the next four years is understandable.  So is Todd Bittle's desire to take advantage of the opportunity to seek public office under the Republican Party banner this fall.  I wish that I could, in good conscience, concur with my friend who registers dissent in this case.  A vote for ballot access, instead of blind adherence to the rules of electoral engagement, always feels like the right and fair thing to do when we are presented cases like the one at hand.  After all, we know that Todd Bittle and the Saline County Republicans who wanted him on the Republican ticket were trying to comply with the election laws when they filed the resolution that they hoped would launch a Republican candidacy for State's Attorney. 

However, before anyone can seek public office, the mandatory requirements of the laws established to guide our electoral process 
must
 be met with strict compliance. "[S]ubstantial compliance [in good faith] is no longer sufficient."  
Knobeloch v. Electoral Board for the City of Granite City
, 337 Ill. App. 3d 1137, 1140, 788 N.E.2d 130, 133 (2003).

Upon further reflection, perhaps a fairer thing to do in cases like the one at hand is to trust the wisdom and fairness reflected in our earlier decisions.  If we follow our precedent and apply the law in the same manner for everyone, we should treat Todd Bittle no differently than we treated Debra Powell or Richard Fancher, when they substantially complied with the electoral law's mandates.  Perhaps it is wiser to adhere to the standard that our high court has told us to apply when deciding what to do in the face of election law violations. 

A little over a year ago, we barred the mayor of East St. Louis from standing for reelection because she had not included a county clerk receipt evidencing the 
date
 on which she had filed her statement of economic interests when she filed nominating papers for reelection.  Mayor Powell had a statement of economic interests on file, but she did not have the receipt that recorded the date of filing.  We confronted an argument that the mayor had substantially complied with the election laws and that the date upon which her economic interest statement had been filed would contribute little, if anything, to the integrity of the selection process.  We held:

"While we may agree with petitioners' argument that they 'substantially and in good faith complied with the applicable election laws,' the argument that substantial compliance is sufficient was specifically rejected by the Illinois Supreme Court in 
DeFabio v. Gummersheimer
 [citation].  
Gummersheimer
 held that a mandatory provision of the Election Code must be enforced even where parties agree there is no knowledge or evidence of fraud or corruption.  We are bound by the holding of 
Gummersheimer
."  
Powell v. East St. Louis Electoral Board
, 337 Ill. App. 3d 334, 338, 785 N.E.2d 1014, 1017 (2003).

We denied ballot access to the sitting mayor of East St. Louis for failing to tell voters the date on which she filed her economic interest statement.  
Powell
, 337 Ill. App. 3d at 338, 785 N.E.2d at 1017.

One month later, we decided a case where a Madison County judge permitted Richard Fancher, a would-be candidate for the office of Granite City superintendent of streets, to remain on the election ballot despite a technical flaw in his filing papers.  We again confronted an argument that the office seeker had substantially, and in good faith, complied with the Election Code's requirements.  

We adhered to our earlier position in 
Powell
 and held that "substantial compliance is no longer sufficient."  
Knobeloch
, 337 Ill. App. 3d at 1140, 788 N.E.2d at 133.  We held:  

"Although we are sympathetic to Fancher's situation, we cannot overlook petitioner's statement that an opposing view '
effectively permits a candidate's ignorance of Illinois law to insulate himself or herself from the consequences of any and all violations of mandatory legal requirements
.'  Here, even though the parties agree that there is no knowledge or evidence of fraud or corruption and that Fancher, at the time of his signing and oath, fully believed that he was certifying said papers before an authorized notary and therefore subjecting himself to the laws of perjury, we believe that we are bound by the supreme court's decision in 
Gummersheimer
."  (Emphasis added.)  
Knobeloch
, 337 Ill. App. 3d at 1140, 788 N.E.2d at 133.

We ordered Fancher's name stricken from the ballot.

None of the justices who unanimously decided the political fate of Debra Powell and Richard Fancher liked having to follow the supreme court's edict.  Nonetheless, we were duty-bound to do so.  

No one failed to see how a statutorily required date could substantially contribute to the selection process's integrity when we decided that the voters of East St. Louis would not have the right to decide whether to keep their mayor in office for another term.  We cannot now turn a blind eye to the importance of a statutorily required date that is absolutely critical to the integrity of the selection process.  There is no way for the certifying authority to properly certify the election ballot without the required date.  The certifying authority's choice of what should appear upon the ballot depends upon the required date of selection to fill the vacancy.

The Election Code reads, in pertinent part:

"The resolution to fill a vacancy in nomination shall *** include, upon its face, the following information:

* * *

(c) the name and address of the nominee selected to fill the vacancy and the date of selection."  10 ILCS 5/7-61(c) (West 2002).  

There is absolutely no question that a statement of the date on which a candidate was selected to fill a vacancy in the nomination process is a mandatory requirement of the Election Code–as necessary to a valid resolution to fill a vacancy in nomination as the name of the selected nominee and the address of the selected nominee.  See 10 ILCS 5/7-61(c) (West 2002).  

Since it is undisputed that the resolution seeking to nominate Todd Bittle did not state the date upon which he had been selected to fill the vacancy, a piece of information that Bittle and his Republican cohorts were legally obligated to supply, our decision here is an easy one.  When the law requires strict compliance, noncompliance cannot be tolerated.  The only thing peculiar about today's decision is that, unlike our earlier decisions, it is not unanimous.  Unfortunately, we are divided in a way that will suggest that political party affiliation, rather than the law, guides our decisionmaking in cases like this.   

Why should we disagree over Judge Spomer's ruling in light of the well-settled standard that we set forth and employed last year when we decided the political fate of Debra Powell and Richard Fancher?  The answer to this question appears to be found in the use of a form provided to the Saline County Republican Party and its would-be candidate for State's Attorney by the Saline County election authority.  The resolution-to-fill-vacancy-in-nomination form provided to Todd Bittle had been sent to Saline County's election authority by the Illinois State Board of Elections, the agency that presumably drafted it.  It had no specific blank in which to fill in the date on which Todd Bittle had been selected to fill the vacancy in nomination.   

If the form was provided to be used by political parties trying to fill vacancies in nomination, it should have provided appropriate fill-in blanks for all the information necessary to comply with the Election Code.  Because the form did not do so, our dissenting colleague believes that Todd Bittle exercised good faith and substantially complied with the Election Code.  I respectfully disagree.  Even though substantial compliance is no longer sufficient, a position of this court that controls the inquiry, I will explain my disagreement.   I recognize a simple truth in Todd Bittle's argument–a truth that no one doubts.  Had the State Board of Elections drafted a better form, one that made it easier to comply with the law, Bittle would have complied with the law.  Here is the argument that the dissent is willing to accept. 

Todd Bittle's failure to comply with the law rests upon the fact that the State Board of Elections failed to provide him with a form that contained a space designated "date of selection."  The form provided did not contain an easy, ready, and complete guide to election law compliance.  Because the form did not have an obvious fill-in blank for the selection date, Bittle was not apprised of the fact that his date of selection was mandated.  Bittle tried, but failed, to comply with the law's mandatory requirements.  His compliance was substantial and his efforts were in good faith because he relied upon a shabbily drafted form.  

Alas, the statutory provision requiring a statement of the date of selection was not met due to, none other than, sheer ignorance of the law.   

I am reminded of a passage from the 
Knobeloch
 decision, a passage that I earlier placed in italics.  Although I am sympathetic to Bittle's plight, we cannot overlook the fact that taking an opposing view would " '
effectively permit
[] 
a candidate's ignorance of Illinois law to insulate himself or herself from the consequences of any and all violations of mandatory legal requirements.
' "  (Emphasis added.)  
Knobeloch
, 337 Ill. App. 3d at 1140, 788 N.E.2d at 133.  

Todd Bittle's argument boils down to this–an effort to insulate himself from the consequences of the law's violation by professing ignorance of the law.  Debra Powell and Richard Fancher would have welcomed a receptive ear when they tendered similar pleas for ballot access.  However, we unanimously dispatched their arguments in recognition of the fact that acceptance of such a position would vitiate the need to comply with any of the election law's mandatory requirements.  

Powell and Fancher were not schooled in the law.  They lacked training in how to open, read, and understand a statute book in order to comply with the law's requirements.  We expect nonlawyers to know what the law requires and to strictly comply with those requirements.  Why then should we not expect lawyers to know what the law requires?  Should we really carve an exception for lawyers who rely upon Illinois bureaucrats to tell them what the law is and how its requirements can be met? 

Justice Donovan did not deem it necessary to address a second problem with Todd Bittle's selection as the Republican nominee for Saline County State's Attorney.  The dissent comments upon it, and I again disagree with the dissent.  

Bittle professes that he has always voted Republican–that he has always been, and remains today, a Republican Party faithful.  While I have no doubt that he speaks the truth, that is not what makes him a qualified primary voter of the Republican Party under the provisions of the Election Code.  

Todd Bittle is not a "qualified primary voter of the Republican Party."  He cannot meet a requirement necessary to the postprimary selection process by which a vacancy in the Republican nomination for State's Attorney is filled.  His beliefs to the contrary, Bittle is a qualified primary voter of the Democratic Party because he chose to vote a Democratic primary ballot on March 16, 2004.  He will remain a qualified primary voter of the Democratic Party until the next primary, when he will again choose what kind of qualified primary voter he is.  

According to Bittle, he wanted to play a role in who would be the Democratic nominee for State's Attorney in Saline County.  He wanted to vote for one of the two candidates seeking that nomination because he practices criminal law in the county.  We are told that his vote in the Democratic primary was not a calculated prelude to his own candidacy as the Republican nominee for the same office.  Bittle claims that he was not approached by Republican Party operatives until after the primary election.

Despite his professed affiliation with the Republican Party, and his loyalty to it, Bittle did not want to have a say in who would be the Republican nominee for the United States Senate this year.  For that matter, he did not care to help shape the Republican ticket at all, by voting from a ballot that selected Republican Party hopefuls for candidacy in the general election.  Instead, he wanted to help pick the Democratic nominee for Saline County State's Attorney. 

I take Todd Bittle at his word.  His choice of a Democratic ballot, and subsequent vote for one of the two Democratic candidates for State's Attorney, was not an effort to select a weaker opponent for himself but an effort to elect the person who he thought would best serve the public interest as a holder of that office.  While that is the case here, it might not always be the case.  

A less honorable and more devious band of Republican loyalists might attempt to corrupt the electoral process, in an effort to defraud Democrats out of an honest primary election of their nominees, by taking Democratic primary ballots and voting for the weakest candidates.  While nothing in the law could prevent such chicanery, the law would prevent any one of those loyalists from being caucused onto the ballot in the same election cycle.  After taking Democratic primary ballots, none of them would be qualified primary voters of the Republican Party.   

Bittle may have voted Republican in the past, but he took a Democratic ballot and voted in the Democratic primary this year.  He can become a qualified primary voter of the Republican Party by taking a Republican primary ballot and voting for Republican nominees in the next primary election.  Until that time, he can do everything expected of a Grand Old Party faithful, including seeking his party's nomination as a candidate through the primary election process, but he cannot call himself a qualified primary voter of the Republican Party.   

This view of the phrase "qualified primary voter" is entirely consistent with the public policy that underlies the party-switching statutory provisions mentioned by the dissent.  I believe that the law does prohibit someone from voting in one political party's primary election and, thereafter, being selected to fill a vacancy in the other party's selection process, because only qualified primary voters of that party can fill such vacancies.   

If a "qualified primary voter" is not someone who most recently voted in a particular political party's primary, who is a qualified primary voter?  Legislators do not have to single out only qualified primary voters for the selection process, if their understanding of what constitutes a qualified primary voter is no more than a person registered to vote in the next primary election.  The term "qualified primary voter" would be meaningless if everyone registered to vote can become a qualified primary voter of either party by a statement of future intention rather than a commitment to a past deed.  

The legislature used the phrase "qualified primary voter" for a reason.  We must give it meaning.  The only reasonable interpretation of the term disqualifies Bittle from the postprimary selection process for Republican Party nominees.  Bittle cannot be slated as a Republican candidate, nominated by party caucus after the primary election, because he is not a qualified primary voter of the Republican Party.  Saying that he will, in all likelihood, vote in the next Republican primary election does not make him a qualified primary voter of the Republican Party.  

For the reasons stated, I specially concur.

JUSTICE WELCH, dissenting:

I respectfully dissent.  If it is true, as this court so recently has stated and as the majority itself acknowledges, that Illinois courts favor ballot access for candidates who wish to run for public office (
Forcade-Osborn v. Madison County Electoral Board
, 334 Ill. App. 3d 756, 760 (2002)), then I do not believe that either of the objections entered by Mr. McSparin to the candidacy of Mr. Bittle is sufficient to prevent the voters of Saline County from making their own decision in the November 2, 2004, general election about who should be their State's Attorney, rather than having this court make that decision for them, as the majority does today.

As to the objection that "[t]he date of Mr. Bittle's selection by the Republican Party does not appear on the face of the resolution filed with the nomination papers, as required by law," I agree with the trial court that because Mr. Bittle was provided a fill-in-the-blank form by the county election authority, which form had in turn been provided to the county election authority by the State Board of Elections, Mr. Bittle substantially complied with the statute and acted in good faith, and I do not believe that he should now be penalized for using the very form provided him by the election authorities.  I believe the majority's holding to the contrary is both unwise and unfair, particularly when the form issued by the State Board of Elections and used in this case does not contain a blank for "date of selection" or anywhere on its face even use the term "date of selection."  Furthermore, I fail to see how the requirement that the resolution must contain a "date of selection" on its face can be said to "contribute substantially to the integrity of the election process," a prerequisite the Illinois Supreme Court has said must be met before a statutory provision regulating elections will be found to be mandatory rather than directory.  
Craig v. Peterson
, 39 Ill. 2d 191, 196 (1968).

As to the objection that "Mr. Bittle's nomination papers are invalid because in his sworn statement of candidacy he claims to be a qualified primary voter of the Republican Party while in fact he voted in the March 16, 2004, Democratic primary," that argument is a nonstarter, with absolutely no basis in existing Illinois precedent, and the majority is wise to steer around it.  Thirty years ago the Illinois Supreme Court decisively determined that a statutory restriction against changing political parties by candidates was an invalid restriction.  
Sperling v. County Officers Electoral Board
, 57 Ill. 2d 81 (1974).  In the 30 years since that decision, the General Assembly has failed to enact any legislation prohibiting the conduct which the circuit court in this matter found to be prohibited.  In fact, the only prohibitions regarding party affiliation for candidates are contained in section 7-61 of the Election Code, which prohibits (1) a defeated primary candidate of one party from running as the candidate of another party in the general election and (2) a defeated caucus candidate of one party running as another party's candidate in the general election.  10 ILCS 5/7-61 (West 2002).  Neither prohibition applies to the case at bar.  Put simply, there is no current statute prohibiting a candidate from voting in one political party's primary election and then running as a candidate of another political party in the general election.

In sum, I find no merit to either of the objections to the candidacy of Mr. Bittle raised by Mr. McSparin.  Accordingly, I would reverse the decision of both the Board and the circuit court and would order that Mr. Bittle's name be placed on the general election ballot as the Republican candidate for Saline County State's Attorney, affording the voters of Saline County the opportunity to decide for themselves whom they want to be their State's Attorney.  I believe it is unfortunate that a party of voters in Saline County will be disenfranchised by, as the majority sets out, a technicality.  Accordingly, I respectfully dissent.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/02/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.